NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN WALDRIP, | Civil Action No. 2:09-CV-06008-JLL |
| Plaintiff, | OPINION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES,** District Judge.

Presently before the Court is Plaintiff Kevin P. Waldrip's Appeal seeking review of Administrative Law Judge ("ALJ") Leonard O'Larsch's final determination denying Social Security Disability Insurance Benefits ("DIB"). Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard before this Court. Plaintiff claims there is not substantial evidence to support the ALJ's determination because no medical examiner was consulted at either the hearing or through interrogatories. Plaintiff requests this matter either be reversed or remanded to the Commissioner for a new hearing and a new decision. For the reasons set forth below, this Court finds the ALJ erred by not consulting a medical expert to determine disability onset date, and remands this case for further analysis.

I.  PROCEDURAL HISTORY

On June 12, 2006, Plaintiff filed an application for Social Security Disability Insurance

Benefits. Plaintiff alleged disability due to childhood abuse, major depression, and chronic adjustment disorder beginning on September 1, 1997. The claim was initially denied. Around Fall 2006, Plaintiff alleged disability due to peripheral vascular disease, a new illness. The claim was denied again upon reconsideration. On May 7, 2009, Plaintiff testified at an administrative hearing held before the Administrative Law Judge Leonard O'Larsch, who found Plaintiff was not disabled from September 1, 1997, the alleged date of disability, through December 31, 2002. On September 25, 2009 the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this decision.

## II.   STATEMENT OF FACTS

Claimant, Kevin P. Waldrip, was 58 years of age on the date of the decision and has a tenth grade education. R. at 51, 149. Claimant's last job of record was as a driver from 1995 to 1997, making deliveries of pet livestock. R. at 53, 146. While employed as a driver, Claimant lifted 50 pounds or more, and sat for 10 hours daily. R. at 146-147. Claimant's employment terminated due to a betrayal issue with a co-worker and an immediate supervisor. R. at 145. Plaintiff also testified that between 2002 and 2005, he worked off the books doing various things including plumbing, sheet work, and painting in exchange for housing. R. at 70-71.

Claimant testified that in 2000, he started to get a cramp-like sensation in his leg. R. at 52. But, Claimant was not financially able to see a doctor until 2006. R. at 52. Thus, there is no medical evidence in the record to demonstrate that Claimant had peripheral neuropathy prior to 2002, the year Claimant was last insured for disability benefits. Claimant notes that he did not have symptoms in 1997. R. at 66. According to his testimony, Claimant's leg progressively worsened. R. Claimant testified that he took some medication for his leg, and it seemingly

stopped, but then worsened again. R. at 59. Claimant also testified that he was unable to stand or walk for six non-continuous hours over an eight-hour period in 2002. R. at 64-65. Claimant took public transportation and walked a few blocks to attend the hearing, with breaks. R. at 57.

Claimant was sexually abused as a child by a priest. R. at 55. Claimant attributes his inability to hold a long term job to difficulties with authority figures stemming from this incident. R. at 54-55, 59. Plaintiff testified that he becomes anxious when speaking to a person in a supervisory capacity. R. at 61. Claimant is currently taking Lexapro, Wellbutrin, and Risperdal. R. at 62. Also, Claimant testified that he had the ability to concentrate on and remember the plot of a movie and is able to read a newspaper in 2002. R. at 63. Claimaint testified that he had been receiving treatment from a mental health therapist. R. at 72.

At the time of the hearing, Claimant was temporarily house-sitting for a friend, and stated that upon his friend's return, he would be living in his car again, where he has been living since 2005. R. at 68-69. Effective June 2006, Claimant qualified to receive Supplemental Security Income ("SSI"), for both peripheral vascular disease and depression. R. at 43.

## III.   LEGAL STANDARD

### A. Determining Disability

The Social Security Act requires a claimant to show he is disabled based on an inability "to engage in any substantial gainful activity[1] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve months." 42 U.S.C. §

---

[1] "Substantial gainful activity" must be both substantial and gainful work activity. 20 C.F.R. § 404.1572. Substantial work activity is "work activity that involves doing significant physical or mental activity." Id. at § 404.1572(a). Gainful work activity is work that is compensated, or done for-profit. Id. at § 404.1572(b).

1382c(a)(3)(A). In order to be disabling, the physical and/or medical impairment must be of such severity that the person is unable to do pervious work. Id. § 1382c(a)(3)(B). Also, in light of age, education, and experience, the impairment must be of such severity that the individual cannot engage in any other substantial gainful activity existing in the national economy. Id.

Existence of a disability must be shown by "medically-acceptable clinical and laboratory diagnostic techniques." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Where medical evidence alone cannot produce a finding of a disability, other evidence must be considered including the claimant's residual functioning capacity ("RFC"), vocational factors, and the "availability of substantial gainful activity that exists in significant numbers in the national economy for someone who can do what the individual can do." Id.

The Social Security Administration promulgated a five-step sequential process to determine whether the applicant is "disabled" under the Act. 20 C.F.R. § 404.1520. The plaintiff bears the burden of proof under steps one, two, and four. Bowen v. Yuckett, 482 U.S. 137, 146 n.5 (1987). Neither side bears the burden at step three. Id. If the plaintiff has met the first four steps, the plaintiff has made out a *prima facie* case, and the burden shifts to the Commissioner at step five. Id. If it is determined that the claimant is not disabled at any step, the evaluation terminates and the claimant will not be entitled to DIB. 20 C.F.R. § 404.1520.

At step one, the Commission determines whether the claimant is currently engaged in substantial gainful activity. Id. at § 404.1520(a)(4)(1). If so, the plaintiff is not disabled under the Act, and the claim is denied. Id. If the plaintiff is not working, the determination proceeds.

At step two, the plaintiff must demonstrate there is a severe, or a combination of severe, medically determinable physical or mental impairment(s). Id. at § 404.1520(a)(4)(ii). An

impairment is severe if it significantly limits the claimant's "physical or mental ability to do basic work activities." Id. at § 404.1521(a). But, an impairment is not severe if it is only "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." SSR 85-28 (1985) (citing Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1981) and Estran v. Heckler, 745 F.2d 340). Moreover, the severity inquiry "is a *de minimus* screeing device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). If claimant can present evidence presenting more than a "slight abnormality," the severity requirement is met. Id. Further, any reasonable doubts in step two should be resolved in the claimant's favor. Id. But, a reviewing court should not apply a more stringent standard of review. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). If the plaintiff cannot prove a sever impairment, disability benefits must be denied.

At step three, the Commissioner determines whether claimant has an impairment(s) that matches or is equivalent to one of the listings in the Listing of Impairments found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant suffers a listed impairment or its equal, the claimant is *per se* disabled. Id. If the claimant does not meet this criteria, the Commissioner proceeds to step four.

At step four, the Commissioner considers the claimant's RFC and ability to perform past relevant work. Id. at § 404.1520(a)(4)(iv). The Commissioner takes into account all medically determinable impairments, including impairments that are not severe. Id. at § 404.1545(a)(2). Past relevant work includes work that the claimant has done "within the past 15 years, that was substantial gainful activity," and the work must have lasted long enough for the claimant to have

learned how to do the job. Id. at § 404.1560(a)(1). If the claimant demonstrates he is unable to perform his past relevant work, he has met his burden of proof and the burden shifts to the Commissioner for the final step.

At step five, the Commissioner must show that the claimant can perform other work in the national economy, in light of claimants vocational factors (age, education, and work experience). Id. at § 404.1520(a)(4)(v). The Commissioner uses the same RFC as determined in step four. Id. at § 404.1545(a)(2). The Commissioner must also demonstrate that such other work exists in significant numbers in the national economy. Id. at § 404.1560(c)(2). To determine what other work the claimant can perform, the Commissioner must consider whether the impairment affects exertional or non-exertional demands of the job. Exertional impairments affect the claimant's "ability to meet strength demands of the job" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at § 404.1569(a). All other impairments are non-exertional including pain; difficulty functioning due to nervousness, anxiety, or depression; inability to concentrate or remember; difficulty seeing or hearing; or difficulty tolerating physical features of the work environment such as dust or fumes. Id. at § 404.1569(c)(1)(i)-(iv).

If the impairment is primarily exertional, and there are no significant non-exertional impairments, the Commissioner may use medical-vocational guidelines ("grids") which take into account claimant's vocational factors from Appendix 2 of the regulations. Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984). But, if there are significant non-exertional impairments, grids alone are insufficient to satisfy the Commissioner's burden as they only consider jobs for claimants with exertional impairments that fit the criteria at various levels. Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000); see also 20 C.F.R. § 404.1569(d). In that case, the Commissioner

must use a "vocational expert or other similar evidence, such as a learned treatise" to determine if the claimant can perform other work. Sykes, 228 F.3d at 273. If Commissioner can present evidence that establishes other work, claimant is not disabled under the Act.

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's findings under 42 U.S.C. § 405(g). The findings are conclusive if they are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); see also 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has a duty to review entire record when determining if the ALJ's findings were supported by substantial evidence. Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003); see also Smith v. Califano, 637 F.2d 986, 970 (3d Cir. 1981). In making this determination, the court may not "weigh the evidence or substitute its conclusions for those of the fact-finder," and the court must give deference to the administrative findings. Sullivan, 970 F.2d at 1182; see also Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Evidence is not considered substantial if it is overwhelmed by other evidence, it constitutes a mere conclusion. Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Further, "a single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent, 710 F.2d at 114. The court must take into account the "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others

who have observed him; and (4) the plaintiff's age, educational background and work history." Curtain, 508 F. Supp. at 793.

IV. **DISCUSSION**

A. **Summary of the ALJ's Findings**

At step one, the ALJ determined that the Claimant was not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. R. at 42. Although Claimant worked off the books from 2002 to 2005, claimant worked in exchange for a place to stay, and did not post any earnings after 1997. R. at 42. At step two, the ALJ concluded that the Claimant did not establish a severe mental or physical impairment through the date last insured. R. at 42. Thus, the analysis ceased, and Claimant was found not to be disabled for Title II benefits. R. at 42.

B. **Analysis**

Plaintiff argues that the ALJ erred in two respects. First, Plaintiff argues that the ALJ's finding in step two, that Plaintiff failed to prove he had a severe impairment before December 31, 2001 was improper. Claimant asserts that the Commissioner's finding that his impairment was not severe was inappropriate because the nature of his two impairments, depression and peripheral vascular disease, are slowly progressive, and therefore the date of onset must be inferred. Pl. Br. at 9, 17. Second, Plaintiff contends that the ALJ was required to obtain a medical expert in order to determine the date of disability onset.

> *1. The ALJ Should Have Consulted a Medical Expert at the Hearing to Determine the Onset Date of Peripheral Vascular Disease and Depression*

The issue before the Court is whether the Commissioner's decision that Plaintiff did not

have a severe impairment is supported by substantial evidence. Although medical evidence alone is not necessary to support a finding of impairment, at least some medical evidence is required. Curtain, 508 F. Supp. at 793; see also 42 U.S.C. § 423(d). The ALJ found an absence of any medical signs or laboratory findings that would substantiate existence of a medically determinable impairment for either depression or peripheral vascular disease prior to December 31, 2002 but did not determine the onset date. R. at 43. When the onset date is unclear, the Third Circuit has held that the Commissioner should determine the onset date pursuant to SSR 83-20. Newell, 347 F.3d at 548. SR 83-20 states that in order to determine onset date, the commissioner should consider the Claimant's "allegations, work history, if any, and the Medical and other evidence concerning impairment severity. SSR 83-20 (1983) . While it may be possible in some cases to reasonably infer the onset date, that judgment "must have a legitimate medical basis." Id. Further, the ALJ "should call on the services of a medical advisor when onset must be inferred." Id.

  Claimant attributed not seeking medical attention until 2006 to lack of funds. R. at 52. According to the Social Security Ruling, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p (1996). Commissioner argues that Plaintiff "chose not to seek medical or other treatment, even when he did have funds" and this "undermined Plaintiff's allegations of disabling symptoms during the relevant period." Def. Br. at 15. But, the record indicates that Plaintiff had no earnings after 1997, and it is reasonable to conclude that Claimant did not have adequate funds to see a doctor. R. at 136.

Further, "claimant may be one of the millions of people who did not seek treatment for a mental disorder until late in the day." Newell, 347 F.3d at 547 (citing Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Thus, Commissioner should not have drawn a negative inference from Claimants failure to seek medical treatment until 2006.

### a. Depression

For depression, Claimant alleges that the date of onset was in 1997, while the earliest medical evidence in the record is dated May 2006. Pl. Br. at 19; Def. Br. at 4. Claimant was diagnosed with depression by multiple authorities and sought treatment at Mt. Carmel Guild. Def. Br. at 4-10; R. at 43. Claimant attributes his depression to having been sexually abused by a priest when he was a child, and says that he now has a chronic lack of trust in people. R. at 9, 174. Claimant's last job ended due to a betrayal issue between a co-worker and immediate supervisor. R. at 146-147. Claimant testified that he now becomes anxious when he has to speak to someone in a supervisory capacity. R. at 61. Further, therapist Marion Houghton found that Claimant "had poor or no ability to interact with supervisors or deal with work stress." Def. Br. at 10.

Claimant previously had a history of alcohol abuse, which he recovered from in 1982, drug use until the mid 1990s, and has attempted suicide. R. at 181, 202. Claimant is taking Lexapro, Wellbutrin, and Resperidal for his mental condition. R. at 62. Further, Claimant was entitled to SSI benefits for depression in June 2006. Pl. Br. at 24. Despite having been diagnosed with depression, claimant's history of abuse, drug use, and suicide, no onset date has been either determined or inferred, except that it was not a disability prior to the date last insured.

*b. Peripheral Vascular Disease*

With regard to peripheral vascular disease, Claimant argues that although there is no documentary evidence prior to his date last insured, the onset date was also September 1, 1997, the day Claimant stopped working. Pl. Br. at 19-20. Claimant also asserts that in June 2006, Claimant was approved for SSI benefits in June 2006 for peripheral vascular disease, despite the absence of a medical diagnosis prior to January 2007. Id. at 20-21. Further, Dr. Henry Rubenstein found that on Claimant's right side, he had "no femoral, popliteal, or dorsalis pedis pulse present." R. at 225. Claimant asserts that it would take months or even years in order for vascular disease to progress to that extent. Pl. Br. at 20.

Despite this, Dr. Howard Golbas, found there was insufficient evidence to determine the existence of peripheral vascular disease prior to December 1, 2006. R. at 239. Further, Plaintiff testified that he did not have symptoms of the disease in 1997, the alleged onset date. R. at 66. But, Claimant testified that his leg cramping started in 2000. R. at 52. Additionally, Claimant admitted that between 2002 and 2005, he did various work off the books including plumbing, sheetrock work, and painting. R. at 70-71. Yet, Claimant said he was able to work because he was free to work at his own pace and take breaks. R. at 71.

Here too, no onset date has been inferred, and no medical expert was consulted at the hearing. Further, there is a discrepancy as to whether Plaintiff had peripheral vascular disease in June 2006. Accordingly, this matter must be reversed and remanded for a new hearing with regard to the issue of disability of both peripheral vascular disease and depression between the expiration of insured status and the award of benefits on June 12, 2006.

Page 11 of 12

V.      CONCLUSION

The Court finds that the ALJ erred by not consulting a medical expert to determine onset date of both depression and peripheral vascular disease.  The Court remands the matter for further analysis in accordance with this Opinion.


DATED: March 3, 2011


/s/ Jose L. Linares
JOSE S. LINARES
UNITED STATES DISTRICT JUDGE